1  THE TIDRICK LAW FIRM LLP
   JOEL B. YOUNG, SBN 236662
2  STEVEN G. TIDRICK, SBN 224760
   1300 Clay Street, Suite 600
3  Oakland, California  94612
   Telephone: (510) 788-5100
4  Facsimile:  (510) 291-3226
   E-mail:    jby@tidricklaw.com
5  E-mail:    sgt@tidricklaw.com

6  WHITTINGTON LAW FIRM
   BRITTANY ARMSTRONG WHITTINGTON, SBN 268260
7  100 Admiral Callaghan Lane #5482
   Vallejo, California 94591
8  E-mail:    brittany@whittingtonlawfirmca.com
   Telephone: (833) 944-8529
9
   ABYE LAW OFFICES
10 MIKAEL A. ABYE, SBN 233458
   88 Kearney Street, Suite 1850
11 San Francisco, California 94108
   E-mail:    mick@abyelaw.com
12 Telephone: (415) 341-4519

13 Attorneys for Individual and Representative
   Plaintiff N.S.T., a minor, by and through her
14 Guardian Ad Litem, MICHAELANGELO
   SAINT THOMAS
15
                    UNITED STATES DISTRICT COURT
16               CENTRAL DISTRICT OF CALIFORNIA
                        SOUTHERN DIVISION
17

18 | N.S.T., a minor, by and through her | Civil Case No. _____ |
   Guardian Ad Litem, MICHAELANGELO
19 SAINT THOMAS, individually and on behalf    **CLASS ACTION COMPLAINT**
   of others similarly situated,
20                                                1. **Strict Liability for Ultrahazardous**
                    Plaintiffs,                      **Activities;**
21                                                2. **Negligence;**
           v.                                     3. **Public Nuisance;**
22                                                4. **Battery; and**
   AMPLIFY ENERGY CORPORATION, a                 5. **Medical Monitoring**
23 Delaware corporation; BETA OPERATING
   COMPANY, LLC, a Delaware corporation;          **DEMAND FOR JURY TRIAL**
24 SAN PEDRO BAY PIPELINE COMPANY, a
   California corporation,
25
                    Defendants.
26

27

28

---

1
PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff N.S.T., a minor, by and through her Guardian Ad Litem, MICHAELANGELO SAINT THOMAS, individually and on behalf of all others similarly situated, alleges the following against Amplify Energy Corporation, Beta Operating Company, LLC, and San Pedro Bay Pipeline Company ("Defendants").

## NATURE OF THE CASE

1. An offshore oil pipeline near the California coast ruptured on October 1, 2021. Defendants, who owned and operated the pipeline, could have prevented this. Their failure to maintain and monitor the pipeline led to its rupture. Moreover, Defendants could have promptly stopped the oil from escaping, but failed to do so. As a result, massive amounts of highly toxic crude oil went into the ocean and onto land. This has caused and will cause widespread harm, including without limitation to children who live in the vicinity.

2. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this case as a class action on her own behalf and as representative of others similarly situated.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendants because they are registered to conduct business in California, and have sufficient minimum contacts with California.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendants have caused harm to Class members residing in this District.

## PARTIES

6. Plaintiff N.S.T. is a minor and appears in this action by and through her Guardian Ad Litem, MICHAELANGELO SAINT THOMAS. They reside in Orange County,

California.

7.    Defendant Amplify Energy Corp. ("Amplify") is a corporation formed in Delaware with its headquarters and principal place of business in Houston, Texas.

8.    Defendant Beta Operating Company, LLC, doing business as Beta Offshore, is a limited liability corporation formed in Delaware with its headquarters and principal place of business in Long Beach, California. Defendant Beta Operative Company, LLC, is a subsidiary of Defendant Amplify Energy Corp.

9.    Defendant San Pedro Bay Pipeline Company is a corporation formed in California with its headquarters and principal place of business in Long Beach, California. Defendant San Pedro Bay Pipeline Company is a subsidiary of Defendant Amplify Energy Corp.

10.    Defendants are private businesses engaged in the business of transporting oil to private entities for commercial purposes. Defendants own and operate three offshore oil platforms and a 17.5-mile pipeline off the coast of Southern California. Defendant Beta Offshore owns and operates the three oil platforms, known as Elly, Ellen, and Eureka. Defendant San Pedro Bay Pipeline Company owns and operates the 17.5 miles pipeline that transports crude oil from the Elly platform to the Port of Long Beach. Defendant Amplify is the parent company of both San Pedro Pipeline Company and Beta Offshore.

**FACTS**

11.    Because Defendants did not shut down the pipeline, reduce the flow of oil, or close crucial valves for hours, the spill grew to disastrous proportions. It has been estimated that as much as 131,000 gallons of toxic crude oil was released.

12.    On October 3, 2021, the OC Health Care Agency issued a health advisory for residents exposed to oil contaminants, warning that the "effects of oil spills on humans may be direct and indirect," and requested that residents "refrain from participating in recreational activities on the coastline such as swimming, surfing, biking, walking, exercising, gathering, etc." The Agency advised that spilled oil, which can contain toxic chemicals, poses health threats via skin contact or inhalation. Symptoms of "excessive exposure to oil or dispersants

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

commonly include the following: skin, eye, nose and throat irritation; headache; dizziness; upset stomach; vomiting; cough or shortness of breath."

13.     Much of the resulting damage is out of sight but will continue for years, and the impact on children is particularly significant. A study recently published in *Environmental Hazards* illustrates various aspects of the damage. The study found that the Deepwater Horizon oil spill was harmful to the mental and physical health of children in the area.

14.     Led by Jaishree Beedasy from the National Center for Disaster Preparedness (NCDP) at Columbia University's Earth Institute, the study found that Gulf Coast children who were exposed to the oil spill – either directly, through physical contact with oil, or indirectly through economic losses – had a significantly higher likelihood of experiencing physical and mental health problems compared to kids who were not exposed. When interviewed in 2014, three out of five parents reported that their child had experienced physical health symptoms and nearly one third reported that their child had mental health issues after the oil spill. The findings also show that "the impacts of the oil spill on children's health appear to persist years after the disaster," said Beedasy.

15.     On July 15, 2020, *Science News* reported on the Beedasy study and stated: "Although natural disasters don't discriminate, they do disproportionately harm vulnerable populations, such as people of color and people with lower incomes. Children are another vulnerable group, because their coping and cognitive capacities are still developing, and because they depend on caregivers for their medical, social, and educational needs. A growing body of evidence demonstrates that disasters are associated with severe and long-lasting health impacts for children."

16.     Oil spills affect children in many ways. The July 15, 2020 article in *Science News* stated: "The child might come into direct contact with the oil by touching it, inhaling it, or ingesting it. Direct exposure to oil, dispersants, and burned oil can cause itchy eyes, trouble breathing, headache, dizziness, rashes, and blisters, among other issues. Children can also suffer from secondary impacts if a parent loses their job, if their daily routines are disrupted, or if others in the family feel distressed or suffer health problems."

17.     In interviews conducted for the Beedasy study, 60 percent of the parents reported that their child had experienced physical health problems – defined as respiratory symptoms, vision problems, skin problems, headaches, and unusual bleeding – at sometime after Deepwater Horizon. Thirty percent of the parents said their child had experienced mental health issues such as feeling depressed or very sad, feeling nervous or afraid, having sleeping problems, or having problems getting along with other children.

18.     The survey found that physical health problems were 4.5 times more common in children who had been directly exposed to oil, and in children whose parents had been exposed to oil smell. Children with indirect exposure to oil through their parents were also much more likely to have physical health issues. And those living in households that reported loss of income or jobs as a result of the oil spill were nearly three times more likely to have physical health problems compared to kids whose families hadn't had those problems. In households where the parent was white, held at least a college degree, or the household income was more than $70,000 a year, the parent was less likely to report physical health issues for the child.

19.     The Beedasy study found similar links in regard to children's mental health. Kids who had been directly exposed to oil were 4.5 times more likely to have mental health issues. These effects were also three times more common in children whose parents had been exposed to oil smell, or whose parents had lost incomes or jobs as a result of the spill.

20.     Defendants could have averted this spill had they properly maintained and monitored their pipeline. Defendants should have automatically shut down the pipeline immediately following the rupture, before residents noticed an oil sheen. Defendants should have been the first to notice the spill and alert authorities. Indeed, if the pipeline contained industry-standard safety alarms properly set to measure a drop in pressure and/or a change in the flow rate of oil, the pipeline should have shut down soon after the rupture. Additionally, valves would have shut, preventing the approximately seventeen-mile pipeline from releasing all of its oil into the water. As is now evident, Defendants lacked or ignored this industry-standard safety alarms and equipment.

21.     Defendants also violated their own integrity management plan. According to Defendants, the pipeline was monitored by an automatic leak detection system that reported problems to a control room in Houston staffed around-the-clock. According to Defendants, the system was designed to trigger an alarm when a change in oil flow occurred. That did not happen. For a spill of this size, with 10% or more of the oil flowing through the pipeline, the Defendants' integrity management plan pegged the detection time at 5 minutes. Defendants did not detect the spill until long after five minutes, in violation of their own integrity management plan.

22.     Defendants violated their integrity management plan in other ways as well. For example, Defendants' integrity management plan stated that for smaller levels amounting to less than 10% of the oil flowing through their pipeline, Defendants' system was designed to detect the spill in 50 minutes or less. As is now clear, Defendants did not detect the spill in 50 minutes or less, or for quite some time thereafter.

23.     Moreover, Defendants' spill response plan from 2016 stated that they would immediately notify federal officials when more than one barrel was released into the water. When more than five barrels were released into the water, or a release threatens state waters or the shoreline, as this spill clearly did, Defendants were required to notify the state fire marshal and California wildlife officials immediately.

24.     Defendants, however, were not the first to notify authorities. After the public noticed the spill, two calls came into the National Response Center staffed by the Coast Guard. The first call, from an anchored ship, reported a sheen on the water. The second call came six hours later from a federal agency that said that satellite imagery showed an oil slick.[44] It took Defendants hours from the times of these calls to notify officials of the oil spill. Indeed, as described above, Defendants waited *an hour* to notify the authorities even after they finally recognized that they had caused a spill.

25.     This action seeks to compensate and protect children who have and will suffer harm from the oil spill and to ensure that Defendants are prevented from causing additional damage in the future.

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## **CLASS ACTION ALLEGATIONS**

26.     Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of similarly situated persons.

27.     Plaintiff initially proposes the class defined as: "Individuals who as of October 1, 2021 were under age 18 and resided within 20 miles of the coastline between Seaport Street in Huntington Beach, California, and the San Juan Creek in Dana Point, California."

28.     Excluded from the Class are Defendants; the subsidiaries and affiliates of any Defendant; the officers, directors, and employees of the foregoing entities, and the members of their immediate families; and any judge or judicial officer presiding over this matter and the members of his or her immediate family and judicial staff.

29.     Plaintiff N.S.T. is a member of the class, and seeks to represent the class by and through her Guardian Ad Litem, MICHAELANGELO SAINT THOMAS.

30.     Plaintiff reserves the right to propose additional or more refined classes of plaintiffs in connection with Plaintiff's motion for class certification, and as determined by the Court in its discretion.

31.     The Class plainly satisfies the requirements of Rule 23(a) and Rule 23(b).

32.     **Numerosity: Federal Rule of Civil Procedure 23(a)(1)**. The members of the Class are so numerous that individual joinder of all Class members is impracticable. There are at least thousands of Class members, making joinder impracticable.

33.     **Commonality and predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3)**. Defendants have acted with respect to Plaintiff and the other members of the proposed Class in a manner generally applicable to each of them. There is a well-defined community of interest in the questions of law and fact involved, which affect all Class members. The questions of law and fact common to the Class predominate over the questions that may affect individual Class members, including the following:

A.  Whether the Defendants violated and/or are liable under the provisions of federal and state law pled herein;

B.  Whether the Defendants owed a duty to Plaintiff and the other Class members;

C.  Whether the Defendants breached that duty;

D.  Whether the Defendants caused harm to the Plaintiff and other Class members;

E.  Whether compensatory or consequential damages should be awarded to Plaintiff and the other Class members;

F.  Whether restitution should be awarded to Plaintiff and the other Class members; and

G.  Whether injunctive and/or other equitable relief is appropriate, and what that relief should be.

34.  **Typicality: Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of other Class members' claims because Plaintiff and class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

35.  **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4)**. Plaintiff is an adequate class representative because Plaintiff's interests do not conflict with the interests of Class members whom they seek to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and their counsel.

36.  **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. Defendants have acted and/or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate.

37.  Injunctive relief is particularly necessary in this case because Plaintiff and

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

other Class members continue suffer harm due to the leak caused by the Defendants' conduct.

38.     **Superiority: Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims. Even if Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

39.     **Certification with respect to particular issues: Federal Rule of Civil Procedure 23(c)(4)**. In the alternative, this action may be maintained as a class action with respect to particular issues. For example, the liability of Defendants for damages caused to Plaintiff and Class members, including liability for negligence, liability for public nuisance, liability for battery, and strict liability for ultrahazardous activities, is suitable for certification under Fed. R. Civ. Proc. 23(c)(4).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### Strict Liability for Ultrahazardous Activities

40.     Plaintiff incorporates all paragraphs of this complaint as if fully set forth herein.

41.     At all times relevant to this action, Amplify Energy Corporation, Beta Operating Company, LLC, and San Pedro Bay Pipeline Company were the owners and operators of the pipeline.

42.     At all times relevant to this action, Defendants had supervision, custody, and control of the pipeline.

43.     At all times relevant to this action, Defendants were under a continuing duty to

protect Plaintiff and the Class from the harm caused by the pipeline.

44.    Defendants were engaged in ultrahazardous activities by transporting flammable, hazardous, and toxic oil through the pipeline.

45.    Plaintiff and the Class have suffered harm from the discharge of toxic oil from the pipeline.

46.    The injuries sustained by Plaintiff and the Class as a result of the oil spill, including without limitation the necessity for long-term medical monitoring, annoyance, upset, aggravation, and inconvenience, were the direct and proximate result of Defendants' activities.

47.    The harm to Plaintiff and the Class was and is the kind of harm that would be reasonably anticipated as a result of the risks created by Defendants transporting flammable, hazardous, and toxic oil in a pipeline on which local oil and gas facilities and their workers depend, and not properly maintaining the pipeline in close proximity to the Pacific Ocean.

48.    Defendants' operation of the pipeline and its failure was a substantial factor in causing the harms suffered by Plaintiff and the Class.

49.    Plaintiff and members of the Class are entitled to recover actual damages. The acts and omissions of Defendants were conducted with malice, fraud, and/or oppression as set out in this Complaint.

## SECOND CAUSE OF ACTION

### Negligence

50.    Plaintiff incorporates all paragraphs of this complaint as if fully set forth herein.

51.    Defendants owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care. That duty arose generally as well as from, among other things, federal, state, and local laws, ordinances and regulations that require Defendants to operate a pipeline in a manner that does not damage public health and safety. These laws include, but are not limited to, the Lempert-Keene Act, Government Code Section 8670, *et seq.*, the Oil Pollution Act, 33 U.S.C. § 2701, *et seq.*, the Porter-Cologne Act, Water Code Sections 13000, *et seq.*, Cal. Fish

& Game Code Section 5650, *et seq.*, the Federal Clean Water Act, 33 U.S.C. § 1251 *et seq.*, applicable county codes, and state and federal spill response and notification laws.

52.     Defendants' contractual transactions to safely operate the pipeline system were also intended to directly benefit the Class because the members of the Class—known to Defendants because they live in the direct vicinity of the pipeline system—would be able to live safely in an industrialized society that continually depends upon energy and fuel. It is foreseeable that Defendants' failure to safely operate the pipeline and mitigate the impacts of the spill would harm this Class. Plaintiff and the Class suffered injury as a result of Defendants' failures to safely operate the pipeline system, because Defendants' actions have fouled the ocean and coastline. Additionally, Defendants' failures were closely connected to the harms Plaintiffs have suffered and will continue to suffer, Defendants' gross misconduct causing an oil spill is morally blameworthy, and policy reasons favor imposing a duty on Defendants in order to deter future misconduct by Defendants and other pipeline operators.

53.     Defendants breached their duty to Plaintiff and the Class by, among other things, failing to install reasonable safety equipment to prevent a spill, failing to detect and repair corrosion, failing to have adequate safety measures in place to detect the spill expeditiously, and failing to promptly respond to and contain the spill.

54.     Defendants, in the exercise of reasonable care, should have known that the pipeline could rupture or otherwise fail, that its safety measures were insufficient to detect and contain a spill, and that it could spill significant amounts of oil.

55.     Moreover, Defendants' violations of the above-cited statutes, ordinances, and/or regulations resulted in precisely the harm to Plaintiff that the laws listed above were designed to prevent, and Plaintiff and the Class are members of the class of persons for whose protection those laws were adopted.

56.     At all relevant times, Defendants negligently, wantonly, carelessly and/or recklessly maintained and operated the pipeline.

57.     As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have sustained damages. Those damages may be short-term and long-term. As a direct

and legal cause of the Defendants' wrongful acts and omissions herein above set forth,
Plaintiff and the Class have suffered and will continue to suffer harm, injury, and other losses
including without limitation the necessity for long-term medical monitoring, annoyance,
upset, aggravation, and inconvenience.

58.     The acts and omissions of Defendants, and each of them, were conducted with
malice, fraud, and/or oppression as described in this Complaint.

### THIRD CAUSE OF ACTION

### Public Nuisance

59.     Plaintiff incorporates all paragraphs of this complaint as if fully set forth
herein.

60.     Defendants have created a condition that is harmful to health and unreasonably
and substantially interferes with the comfortable enjoyment of life and property by
discharging as much as 131,000 gallons of crude oil into the Pacific Ocean and onto the
California coastline. That nuisance affects a substantial number of individuals similarly
situated to the Plaintiff that rely on the safe and healthy environment in the community.

61.     Defendants' oil spill is a condition that would reasonably annoy and disturb an
ordinary person, as shown by, for example, the health impacts warned of by the county, the
community outrage in response to the spill, and the nationwide interest in the spill's impacts
on the California Coast.

62.     The seriousness and gravity of that harm outweighs the social utility of
Defendants' conduct. There is little or no social utility associated with releasing tens of
thousands of gallons of oil into the unique ecological setting of the geographic area where
Plaintiff and Class members reside.

63.     Plaintiff and Class members suffered harm and injury to which they did not
consent.

64.     The acts and omissions of Defendants described herein were also in violation
of various California state laws including but not limited to the Lempert-Keene Act,
Government Code Section 8670, *et seq.*, the Oil Pollution Act, 33 U.S.C. § 2701, *et seq.*, the

Porter-Cologne Act, Water Code Sections 13000, *et seq*., and Cal. Fish & Game Code Section 5650, *et seq.*

65.     Defendants' violations of those statutes directly and proximately caused, and will cause, injury to the Plaintiffs and the Class of a type which the statutes are intended to prevent. Plaintiff and the Class are of the class of persons for whose protection these statutes were enacted.

66.     As a direct and legal result of Defendants' wrongful acts and/or omissions herein set forth, Plaintiff and the Class have suffered and will suffer injury and losses, including without limitation the necessity for long-term medical monitoring, annoyance, upset, aggravation, and inconvenience.

67.     To remedy the harm caused by Defendants' nuisance, Plaintiff will seek public injunctive relief, including without limitation an order requiring Defendants to: (1) provide for long-term medical monitoring; (2) repair and restore beaches and other areas impacted by the spill; and (3) prevent Defendants from operating the pipeline without adequate safety mechanisms and ongoing monitoring, to ensure that no future spill occurs.

68.     In maintaining the nuisance, which is ongoing, Defendants are acting with full knowledge of the consequences and damage being caused, and the acts and omissions of Defendants were done with malice, fraud, and/or oppression as described in this Complaint.

## FOURTH CAUSE OF ACTION

### Battery

69.     Plaintiff incorporates all paragraphs of this complaint as if fully set forth herein.

70.     Defendants contacted Plaintiff and Class members through the release of toxic oil and thereby into the bodies of Plaintiff and Class members.

71.     Defendants intended and/or were recklessly indifferent to making such contact.

72.     The contact between the toxic oil and the Plaintiff and Class members was harmful or offensive.

73.     As a direct and proximate result of Defendants' battery, Plaintiff and Class

members have suffered damages, including without limitation for long-term medical monitoring, annoyance, upset, aggravation, and inconvenience, for which Defendants are liable in damages.

**FIFTH CAUSE OF ACTION**

**Medical Monitoring**

74. Plaintiff incorporates all paragraphs of this complaint as if fully set forth herein.

75. Defendants have exposed Plaintiff and Class members to oil and other chemicals, toxins, and particulates proven hazardous to health.

76. Defendants have also exposed Plaintiff and Class members to conditions proven hazardous to mental health.

77. The exposure to these dangerous substances and conditions is such that Plaintiff and the Class members have been placed at an increased risk of contracting latent illness and disease, including but not limited to cancer and mental health issues, and as such, require medical monitoring which Defendants are responsible for providing and paying for.

78. Monitoring and testing procedures for cancer and other illnesses associated with exposure to oil and other chemicals, toxins, and particulates exist, as well as for mental health issues, which make the early detection and treatment of such diseases and health conditions possible and beneficial.

79. Accordingly, the Court should establish a Court-supervised and administered trust fund and medical monitoring regime to compensate Plaintiff and Class members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all Class members, pray for relief against Defendants as follows:

A. For an order certifying the Class, appointing Plaintiff as representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

B. For an order awarding Plaintiff and Class members damages an amount greater than

Five Million Dollars ($5,000,000) for all recoverable compensatory, statutory, nominal, and other damages sustained by Plaintiff and the Class, including without limitation for long-term medical monitoring, annoyance, upset, aggravation, and inconvenience, and including all relief allowed under applicable laws;

C.  For preliminary, permanent, and mandatory injunctive relief, including without limitation an injunction requiring each Defendant to fund, establish, and/or implement a long-term Court-supervised and administered trust fund and medical testing protocol, medical monitoring, and/or testing regime to monitor the health of Plaintiff and Class members and diagnose at an early stage any ailments associated with exposure to chemicals in toxic crude oil and/or mental health problems resulting directly or indirectly from the oil spill;

D.  For costs;

E.  For both pre-judgment and post-judgment interest on any amounts awarded;

F.  For treble damages insofar as they are allowed by applicable laws;

G.  For exemplary or punitive damages under California Civil Code Section 3294 for the oppression, fraud, and malice alleged herein;

H.  For disgorgement of profits;

I.  For a declaratory judgment that Defendants have violated California law as alleged herein and are responsible for past and future costs to remedy the harm caused to Plaintiff and Class members;

J.  For payment of attorneys' fees and expert fees as may be allowable under applicable law, including without limitation California Code of Civil Procedure §§ 1021.5 and 1033.5; and

K.  For such other and further relief, as the Court may deem just and proper, including without limitation injunctive and declaratory relief.

//

//

//

DATED:  October 17, 2021                    Respectfully submitted,

                                            THE TIDRICK LAW FIRM LLP

                                    By:       /s/ Joel B. Young
                                            _____
                                            JOEL B. YOUNG, SBN 236662
                                            STEVEN G. TIDRICK, SBN 224760

                                            THE TIDRICK LAW FIRM LLP
                                            1300 Clay Street, Suite 600
                                            Oakland, California  94612
                                            Telephone:      (510) 788-5100
                                            Facsimile:      (510) 291-3226
                                            E-mail:         jby@tidricklaw.com
                                            E-mail:         sgt@tidricklaw.com

                                            Attorneys for Individual and Representative
                                            Plaintiff N.S.T., a minor, by and through her
                                            Guardian Ad Litem, MICHAELANGELO
                                            SAINT THOMAS

## **JURY DEMAND**

Plaintiffs hereby demands a trial by jury on all counts so triable.

DATED:  October 17, 2021                    Respectfully submitted,

                                            THE TIDRICK LAW FIRM LLP

                                    By:       /s/ Joel B. Young
                                            _____
                                            JOEL B. YOUNG, SBN 236662
                                            STEVEN G. TIDRICK, SBN 224760

                                            THE TIDRICK LAW FIRM LLP
                                            1300 Clay Street, Suite 600
                                            Oakland, California  94612
                                            Telephone:      (510) 788-5100
                                            Facsimile:      (510) 291-3226
                                            E-mail:         jby@tidricklaw.com
                                            E-mail:         sgt@tidricklaw.com

                                            Attorneys for Individual and Representative
                                            Plaintiff N.S.T., a minor, by and through her
                                            Guardian Ad Litem, MICHAELANGELO
                                            SAINT THOMAS

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL